**Earl D. WAGNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52150.**

Court of Criminal Appeals of Texas.

Dec. 8, 1976.

Garcia & Garcia, Edinburg, for appellant.

Oscar B. McInnis, Dist. Atty., Edinburg, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction is for the offense of theft by false pretext under Article 1413, former penal code. Following the return of a verdict of guilty by the jury, the court assessed punishment at five years, probated. On appeal, Wagner challenges the sufficiency of the evidence.

After viewing the evidence in the light most favorable to the jury's verdict, we conclude that it is insufficient to show a false pretext and reverse the conviction. On April 11, 1973, Ovidio Gutierrez Martinez entered into an agreement to purchase three grain silos from Wagner for $30,000.00 with a 25 percent down payment and the remainder between May 15 and May 30, 1973, upon delivery of the silos. Martinez paid Wagner $750 in cash at the time of their agreement and returned the next day and gave Wagner a check in the amount of 84,375 pesos, Mexican currency, drawn on the Banco Nacional de Mexico, that amount being equivalent to $6,750.00. This check was deposited by Wagner to his account in the Valley National Bank of McAllen. The silos were never delivered to him nor was the down payment refunded to Martinez.

Martinez testified that he was accompanied by Ramon Cazares and Anastacio Gutierrez when he entered into the transaction with Wagner. When the silos were not delivered in May, Martinez made several attempts to find Wagner by telephone and in person. In the latter part of June he finally found him in McAllen and Wagner then stated that the silos had not arrived because the truck upon which they were being shipped was lost. Martinez then returned to Mexico to await delivery of the shipment. Martinez next saw Wagner in October at McAllen and Wagner said that the truck had not arrived because of snow on the roads. Wagner said that he would be in touch with him the next day.

On cross-examination, Martinez admitted that he had had prior business dealings with Wagner as early as 1971. He then identified defendant's exhibits numbers 1, 2 and 3 as orders placed by him with Wagner on March 25, 1971, April 29, 1971, and May 22, 1971. He testified that at the times of those transactions Wagner required 25 percent down payment and the balance on delivery. He further testified that in accordance with the terms of the complained of transaction, appellant did perform the surveying operations in laying out the area that was to be used for the silos as agreed. Cazares testified that he had seen Wagner in Martinez's office in Reynosa, Mexico on several occasions. Anastacio Gutierrez, Martinez's brother, testified that Wagner had installed some equipment at his brother's place of business in Reynosa but he was not exactly sure of the date.

Appellant testified that he had moved to Texas from Kansas in August of 1967. He worked with the Texas Concrete Silo Company from 1967 until 1971 designing, drafting and supervising the construction of grain silos. He further testified that during his period of employment with Texas Concrete Silo Company he had done busi-

ness with several individuals in the Republic of Mexico and that on such occasions contractual agreements were executed requiring a down payment of 25 percent with the balance on delivery at McAllen. In 1971 he became associated with Coale Agri Systems. Shortly after his association with Coale Agri Systems, he had several transactions with Martinez and the terms of those contracts in 1971 were 25 percent down with the order and the balance on delivery in McAllen. Concerning the transaction in question, Wagner testified that defendant's exhibit No. 9 was a purchase order dated May 2, 1973 constituting an order for the equipment he had agreed to sell Martinez. Defense exhibit No. 11 was identified as a letter dated May 7, 1973 from Coale Agri Systems thanking him for his order but informing him that he would have to pay cash which was a change from the previous policy where orders had been shipped C.O.D. Wagner testified that at the time he had receive the money from Martinez he had a balance of $10.02 in his bank account and that he was "in a bind" financially. Wagner deposited the $6,750 in his personal bank account and immediately began writing checks to pay other obligations. Wagner stated that the sole reason for his failure to deliver the three silos as initially agreed was that the company had changed its payment policy on the orders to requiring cash before delivery. He stated that it was not until early May when he received the letter identified as defendant's exhibit No. 11 that the company would require 100 percent payment in advance for all silos before they would be shipped. He testified that at no time did he intend to keep the money and not perform his part of the agreement. He related that he had made several attempts to get the company to send the equipment according to the terms of its previous policy and that such attempts were to no avail. Wagner stated that he had used the $6,750 to pay for other expenses as he had always in the past used the money given him as a down payment because it represented a substantial portion of the commission fee he would receive at the time of the completion of the sale. He

stated that during the months of May, June and July, 1973, he could have refunded the money to Martinez had he desired to do so. He did not make any effort to return the money to Martinez because he still thought that he could work out arrangements with his supplier in accordance with past payment policies.

The indictment in the present case charged appellant with theft under the provisions of Article 1410, V.A.P.C. (1925 Code). A prosecution for theft by false pretext could be had upon a general indictment for theft. *Cameron v. State,* 401 S.W.2d 809 (Tex.Cr.App.1966). Article 1413, V.A.P.C., provided:

"The taking must be wrongful, so that if the property came into possession of the person accused of theft by lawful means, the subsequent appropriation is not theft, but if the taking, though originally lawful, was obtained by any false pretext, *or* with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." (Emphasis Supplied)

Two modes of committing the offense are embraced in the provision as to lawful taking; namely, obtaining the property by false pretext, and obtaining it with an intent to deprive the owner of the value of the property in question. 55 Tex.Jur.2d, Section 17, page 293. Appellant contends that in order to constitute theft by false pretext it must be proved that a false pretext did in fact exist as well as an intent to deprive the owner of property and subsequent appropriation of it. A conviction for theft under false pretext under the provisions of Article 1413, supra, could have been sustained upon proof of either mode, provided however that the court has so charged the jury. See *Clay v. State,* 171 Tex.Cr.R. 151, 346 S.W.2d 128 (1961), and *Windham v. State,* 169 Tex.Cr.R. 451, 335 S.W.2d 219 (1960).

In Paragraph III of its charge, the court instructed the jury as follows:

"To constitute theft by false pretext it is necessary at the time of the taking that the person obtained the corporeal personal property by means of some false pretext *and* with the intent at the time of the taking to deprive the owner of the value thereof, and to appropriate it to the use or benefit of the person taking, and the offense of theft by false pretext, when such property is so taken and so appropriated, is complete, provided said wrongful intent to take and appropriate said property to the use or benefit of the person taking, and to deprive the owner of the value thereof, existed at the very time the property was taken, and appropriated and this is the case notwithstanding that the property so acquired with such wrongful intent may have been obtained with the consent of the person from whom it was taken." (Emphasis Supplied)

Then in Paragraph IV the jury was charged as follows:

"Now bearing in mind the foregoing instructions, if you find and believe from the evidence in this case beyond a reasonable doubt, that the Defendant, EARL D. WAGNER, did, in Hidalgo County, Texas, on or about the 12th day of April, 1973, obtain possession of Six Thousand Seven Hundred Fifty and No/100 ($6,750.00) Dollars in money from Ovidio Gutierrez Martinez by representing to the said Ovidio Gutierrez Martinez that he would deliver to the said Ovidio Gutierrez Martinez three fully equipped silos between the 15th and the 30th day of May, 1973; and if you further find and believe from the evidence beyond a reasonable doubt that said representations, if any, of the said EARL D. WAGNER were fraudulent and false, and that he knew that said representations were fraudulent and false at the time he made them and at that time the said Earl D. Wagner knew that in truth and in fact he could not perform any of such acts he represented he could, and that the said Earl D. Wagner knew at the time that such representations were fraudulent and false, and that as a result of said representations so made, if they were made, the said defendant acquired from the said OVIDIO GUTIERREZ MARTINEZ the said corporeal personal property; and if you further find from the evidence beyond a reasonable doubt that said representations, if any, of the said defendant to the said Ovidio Gutierrez Martinez were made with the intent to deprive the said Ovidio Gutierrez Martinez of said personal property and the value thereof, and to appropriate the same to the use or benefit of the defendant, and that he did, in said manner, obtain possession of said property and appropriate the same to his own use or benefit by said representations, if any, and that said wrongful intent, if any, existed at the time of said acquisition, if any, and that said alleged property was of the value of fifty dollars or more, and that said Ovidio Gutierrez Martinez was in lawful possession of said property and parted with the possession thereof to defendant as a result of and in reliance on said representations, if any, of the said defendant, and believed said representations, if any, to be true at said time, then you will find the defendant guilty as charged."

■ The court's charge required a finding that the money was obtained by a false pretext. Both modes of committing theft were required. Not only was a false pretext required under the first mode, but the taking of the money knowing that it did not belong to him with the intent to appropriate and to so appropriate it under the second mode. It would be a closer question if only the second mode had been submitted.

■ We conclude that the evidence does not show that a false pretext was made at the time Wagner received the money from Martinez. Even though the jury was not bound by Wagner's testimony, the evidence of Martinez and the documents show that they had previous dealings where 25 percent of the purchase price was paid in advance and the balance when the goods were delivered. Wagner did order the silos and

equipment and performed the surveying and marking of the area on which the silos were to be erected. The policy of the company to require payment in advance was changed.

■ Even if the evidence may have been sufficient to support a conviction under the second mode, "with an intent to deprive the owner of the value thereof," the evidence is insufficient under the facts of this case to show that the money was obtained by appellant from Martinez under false pretext.[1] For the reasons stated, the judgment is reversed and the cause remanded.

1. Wagner's counsel cites Article 1429 of the former Penal Code, "Conversion by bailee", which is not involved. There may be sufficient proof to support such a conviction but we are not called upon to pass on that question because he was not tried for that offense.