**Onnie Mack WAGNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61601.**

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 1, 1984.

Rehearing Denied Feb. 13, 1985.

Charles Sexton, Orange, for appellant.

William C. Wright, County Atty. and James O. Jenkins, Jr., Asst. County Atty., Orange, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and W.C. DAVIS and TEAGUE, JJ.

## OPINION

W.C. DAVIS, Judge.

A jury found appellant guilty of murder and assessed punishment at eighty-five years' confinement. Appellant alleges eleven grounds of error.

Several of those grounds concern his Motion for Continuance and Notice of Possible Insanity Defense. This motion involved three issues: continuance, a competency hearing, and notice of insanity defense. The court overruled the motion for a continuance, which appellant claimed was needed in order to obtain additional psychiatric testing of appellant "as to his mental condition."

The record shows that the docket sheets contain a notation that appellant was arraigned on February 17, 1978 and the case set for trial April 10, 1978. The case was then reset for trial on June 19, 1978 and June 26, 1978. Appellant's motion was filed June 16, 1978. The clerk for the 260th District Court of Orange County testified that a copy of the criminal docket of the 260th District Court was mailed to appellant's counsel May 19, 1978, and that it contained a paragraph stating that any motions for continuance must be filed by May 31, 1978. Appellant's counsel did not dispute this testimony. The motion was untimely filed; the court did not abuse its discretion in overruling the motion for continuance. *Hernandez v. State*, 643 S.W.2d 397 (Tex.Cr.App.1982); *Taylor v. State*, 612 S.W.2d 566, 570 (Tex.Cr.App.1981).

The trial court granted appellant's motion for a competency hearing and denied his motion for the insanity defense because it was untimely filed in violation of Art. 46.03, § 2, V.A.C.C.P. Appellant claims that the trial court abused its discretion in failing to allow appellant to present evidence about the issue of insanity because the notice of insanity defense was filed ten days before the case *actually* went to trial.

Once *again* we note the pertinent dates involved: the case was originally set for trial April 10, 1978 and then set for June 19, 1978 and June 26, 1978. Appellant filed his notice of insanity defense June 16, 1978. Art. 46.03, § 2, V.A.C.C.P. states in pertinent part:

(a) A defendant planning to offer evidence of the insanity defense shall file a notice of his intention to offer such evidence with the court and the prosecuting attorney:

(1) at least 10 days prior to the date the case *is set* for trial;

(b) Unless notice is timely filed pursuant to Subsection (a) of this section, evidence on the insanity defense is not admissible unless the court finds that good cause exists for failure to give notice. [Emphasis added]

■ At the time appellant's motion was heard, June 16, the case was set for trial on June 19. Because the court then held a competency hearing, the case did not go to trial on the merits until June 26. The case was set to go to trial on June 19 at the time appellant's motion was filed on June 16. Since the June 16 filing was not ten days prior to June 19 trial setting, we find that the trial court correctly held that the notice of insanity defense was untimely filed. See *Schaffer v. State*, 590 S.W.2d 490 (Tex.Cr.App.1979). The trial court has the discretion to decide whether good cause is present for failure to file timely. *Schaffer*, supra. No evidence was presented by appellant explaining why he waited until June 16 to file notice. No abuse of discretion is shown. This ground of error is overruled.

■ In a related ground of error appellant claims that the trial court erred in overruling his motion for psychiatric examination filed the day the trial began, June 26, 1978. At a hearing on June 19 a jury found appellant competent to stand trial. Appellant's notice of insanity defense had been rejected for being untimely filed, and no good cause was shown for the untimely filing. Then on June 26 appellant filed this motion for psychiatric examination to determine "whether defendant was *sane* at the time of the offense." (Emphasis added) The court had already ruled out the insanity defense, therefore, as the State notes, any motion "pertaining to the defense of insanity was rendered moot." The court did not abuse its discretion in overruling appellant's motion. See *Hammett v. State*, 578 S.W.2d 699, 707 (Tex.Cr.App. 1979); *Porter v. State*, 623 S.W.2d 374, 380 (Tex.Cr.App.1981).

The trial court granted appellant's motion for a competency hearing. Appellant now claims that this hearing violated due process because the trial court failed "to allow appellant sufficient time to obtain the necessary psychiatric testimony necessary to the presentation of his case on competency."

Appellant's motion for continuance encompassed his motion for a competency hearing by stating that "the people doing the testing are of the opinion that further testing is needed to reach a complete well-reasoned opinion." It states further that "there is a question" as to the competency of appellant to stand trial. The court then held a competency hearing. Appellant made no objections before, during or after the hearing to suggest that the psychiatric evaluation used for the competency hearing was incomplete. Appellant's bill of exceptions made after the hearing simply produced testimony of a defense witness that there was a need for more treatment for appellant's mental illness. No mention was made of any need for psychiatric testing for competency.

■ The objection offered on appeal was not presented to the trial court. A specific

objection raised on appeal will not be considered if it varies from the specific objection made at trial. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979); *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App.1976). Nothing is presented for review.

Appellant claims that the court erred in admitting testimony at the competency hearing concerning a statement appellant gave police because this evidence was not relevant to competency and was prejudicial to appellant.

■ As the State points out, the details and substance of the statement were not made known to the jury and the statement was never referred to as a confession. The testimony involved only appellant's understanding of the proceedings and his ability to communicate with others. In addition, appellant objected specifically on the grounds of the issue of the voluntariness of the confession and not on relevance grounds. Appellant may not now assert this contention for the first time on appeal. *Carillo*, supra; *Bouchillon*, supra. This ground of error is overruled.

We will address three related grounds of error together. Appellant claims that his confession should not have been admitted at trial because appellant had not knowingly and intelligently waived his right, Art. 38.22, V.A.C.C.P., and because he was not taken before a magistrate before giving the confession, Art. 15.17, V.A.C.C.P. Appellant also argues that the court should have charged the jury on the issue of the voluntariness of the confession.

The trial court held a hearing on appellant's motion to suppress his confession. The testimony showed, and the trial court made written findings of fact to the effect that, the confession was voluntary, that Art. 38.22 had been followed, and that appellant intelligently and knowingly waived his rights under Art. 38.22.

■ The fact that appellant was not taken before a magistrate until after he had given his statement does not render the confession invalid absent a showing of a causal connection between the confession and the failure to take him before a magistrate. *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978). Appellant did not show any such connection. These grounds of error are overruled.

■ The last confession related error concerns the court's denial of appellant's requested charge to the jury on the issue of the voluntariness of the confession. If the evidence offered *before the jury* did not raise the issue of voluntariness appellant was not entitled to a jury charge on the matter. *Brook v. State*, 567 S.W.2d (Tex.Cr.App.1978). Appellant does not cite the record regarding evidence heard by the jury concerning voluntariness, nor does our review of the record reveal such evidence. The State's evidence showed that the confession was voluntary. This evidence was not undermined or rebutted before the jury in any way. Appellant's ground of error is overruled.

Appellant also complains of the denial of another of his requested charges. He requested a charge on the issue of common law marriage between a State's witness and appellant. See Tex.Fam.Code Ann. § 1.91 (Vernon 1975). Again appellant does not cite us to any place in the record where the issue was raised before the jury, nor did our examination of the record reveal such evidence. This ground of error is overruled. *Brook*, supra.

Appellant contends that exclusion of evidence of a physical condition of appellant, during the trial on the merits, was error. The evidence consisted of testimony and x-rays to show that shotgun pellets were situated somewhere in appellant's head and that his frontal sinuses are somewhat larger than usual. Appellant appears somewhat confused in his use of *Cowles v. State*, 510 S.W.2d 608 (Tex.Cr.App.1974) to assert the claim that where specific intent is involved as an element of the crime, evidence of mental weakness falling short of legal insanity is admissible at the guilt-innocence phase of the trial. While the foregoing statement is correct, appellant is mistaken in claiming that specific intent

was an issue in his case. Appellant was charged with intentionally or *knowingly* causing the victim's death. In *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Cr.App.1981) a defendant was also charged with intentionally or knowingly causing a person's death. He requested a charge stating that if the jury found that he did not specifically intend to hit the victim he should be acquitted. The Court quoted *Dockery v. State*, 542 S.W.2d 644 (Tex.Cr.App.1975) (opinion on Motion for Rehearing) and discussed the fact that an unintentional act can still be a criminal offense if done with knowledge, recklessness or negligence. His charge on specific intent was denied. Appellant's situation is similar. No specific intent need be proved, knowledge will suffice.[1]

One of appellant's witnesses stated that appellant was not insane but that he might have problems with impulse control and that he was aware of what was happening but that his emotional contact was a bit displaced. In *Cowles*, supra, the court stated:

> [w]hen an expert witness for the defense testifies that the accused was legally sane at the commission of the act, and the offense is not one where specific intent is an element of the crime, an offer of testimony by that witness as to the mental aberration or the emotional problems of the accused should be rejected at the guilt-innocence stage of the trial.

510 S.W.2d at 610.

The trial court correctly excluded the testimony. The ground of error is overruled.

Appellant's last ground of error is that a state reputation witness was shown to be incompetent to testify to appellant's reputation in the community because he based his testimony on a single specific act of appellant.

In *Mitchell v. State*, 524 S.W.2d 510 (Tex.Cr.App.1975) the Court clarified the requisites for reputation witnesses. The two-prong qualification requirement consists of (1) testimony by the witness

that he has discussed or heard of appellant's reputation with other people; and (2) the discussion cannot be based on the particular offense for which appellant is on trial, although it can be based upon the offense for which the defendant is on trial and a discussion of matters other than the instant offense. *Watson v. State*, 605 S.W.2d 877 (Tex.Cr.App.1979) (opinion on rehearing 1980).

Officer Ray Long testified on voir dire as follows:

Q. Mr. Long, when—I presume that you are here to testify about the reputation of Onnie Mack Wagner, is that correct?

A. Yes, sir.

Q. In the community?

A. Yes, sir.

Q. What do you base that testimony on?

A. On information received from another member of the community.

. . . .

A. We discussed the fact that Mr. Gans stated that he and his wife had been—their lives had been threatened by Mr. Wagner.

Q. Anything else?

A. I can't recall.

Q. In other words, it's in relation to this specific act, is when you interviewed Mr. Gans, is that correct?

A. It was in relation to a terroristic threat and it was in relation to a—

Q. That and that only, is that correct?

A. Yes, sir, that's what Charles discussed with me.

Q. You didn't discuss anything else other than that threat?

A. That's all we discussed.

*Crawford v. State*, 480 S.W.2d 724 (Tex. Cr.App.1972) discussed the qualifications for reputation witnesses and addressed appellant's identical contention. The court said:

> Although the officers could not testify to specific acts, it is not improper for

---

1. See generally LaFave and Scott, Criminal    Law § 28 (1972).

them to discuss specific acts with other persons as a basis for determining what appellant's reputation is in the community. The appellant's cross-examination of the officers did not show them to be unqualified to testify concerning the appellant's bad reputation. See and compare *Frison and Watts v. State*, 473 S.W.2d 479 (Tex.Cr.App.1971).
480 S.W.2d at 726–27.

Appellant's last ground of error is overruled. The judgment is affirmed.

TEAGUE, Judge dissenting.

In his eleventh ground of error, which the majority of the panel overrules, appellant asserts that the trial court erred in permitting Ray Long, an Orange police officer, to testify at the punishment stage of the trial that in his opinion appellant had a bad reputation in the general community in which he resided for being a peaceable and law-abiding citizen.

Implicitly, the majority finds that Long was qualified to give his opinion that appellant had a bad reputation in the general community in which he lived for being a peaceable and law-abiding citizen. I totally disagree with this finding.

Long testified outside of the presence of the jury that he had formed his opinion solely from a criminal investigation he had conducted, wherein Charles Gans, the present husband of the daughter of the deceased, who was formerly appellant's betrothed, had complained to him that he and his wife had been threatened by appellant approximately two months before trial.

It is elementary hornbook law that before a witness is entitled to give an opinion that an accused's general reputation for having a particular character trait in the community in which he lives or resides is bad, the witness must have actually discussed the subject of the accused's reputation with someone in the community and that person must have told the witness that the accused's general reputation for having that particular character trait in the general community was bad. *Jackson v. State*, 628 S.W.2d 446, 450, n. 2 (Tex.Cr.App.

1982). In this instance, Long never testified that Gans told him appellant's reputation for being a peaceable and law-abiding citizen in the general community in which he lived was bad. Long was not a qualified reputation witness and should not have been permitted to testify.

Contrary to the majority's authority of *Crawford v. State*, 480 S.W.2d 724 (Tex.Cr. App.1972), in this cause appellant's counsel did establish on voir dire that Long was unqualified to testify concerning appellant's bad reputation.

Perhaps, however, the majority has read elementary law books on the subject but has not yet read what it has quoted from the record on page 8 of its opinion, especially the last question and answer.

McCormick, Ray, Wigmore, and all the other greats who have expounded on the subject, or their present day publishers, are implicitly warned by the majority: Tear out of your books on evidence the chapter on how a bad reputation witness is qualified.

Finding that the majority is clearly and totally in error, I respectfully dissent.

Before ONION, P.J., and McCORMICK, CAMPBELL and CLINTON, JJ.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge.

We granted rehearing in order to reexamine the last two contentions raised by appellant and discussed in a panel opinion on original submission, *viz:* that evidence of appellant's physical condition at the time of the offense should have been admitted on the issue of intent, and that an unqualified reputation witness was allowed to testify at the punishment hearing.

In his bill of exceptions appellant introduced an electroencephalograph report and skull x-rays of appellant dated June 20, 1978, approximately three months prior to the commission of the offense. Dr. William Bryant, a radiologist at Orange Memorial Hospital testified that the x-rays show shotgun pellets projected over a region of

appellant's head. He also noted an enlargement of the frontal sinuses. Bryant stated he could not be sure, but he did not believe the pellets had penetrated into appellant's brain.[1] He testified that enlargement of the sinuses might signal atrophy of the brain, but that a number of things could cause such an enlargement and further study was needed. Dr. Wallace Norton, a phychiatrist who examined appellant, testified that enlargement of sinuses is sometimes associated with deterioration of the frontal lobes, which areas, if impaired, could affect impulse control. Wallace stated that based on his contact with appellant, he concluded appellant was not insane but that neurological or functional impairment of specific areas of the brain was possible. While he was aware of what was happening around him, appellant's emotional contact appeared to Norton to be "a little bit displaced." [2]

■ On original submission the panel concluded that appellant's reliance on *Cowles v. State*, 510 S.W.2d 608 (Tex.Cr. App.1974) was misplaced. Because the trial court charged the jury that it must find appellant "intentionally or knowingly" caused the death of the victim, specific intent was not in issue, and therefore the exception to the rule announced in *Cowles v. State*, supra, could not be invoked.[3] This is so because the jury was authorized to convict appellant if it found he *knowingly* caused the victim's death. See *Womble v. State*, 618 S.W.2d 59 (Tex.Cr.App.1981).

■ However, appellant correctly points out in his motion for rehearing that the trial court charged conjunctively rather than disjunctively as to the culpable mental state in the paragraph applying the law to the facts. The jury was instructed that it could convict appellant if it found he "knowingly *and* intentionally" caused the victim's death. Sufficient proof of both mental states was therefore required for conviction. *Cf. Ortega v. State*, 668 S.W.2d 701 (Tex.Cr.App.1983); *Wagner v. State*, 544 S.W.2d 143 (Tex.Cr.App.1976). While it is true that "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged [,]" V.A.P.C., § 6.02(e), so that "knowledge" *per se* did not necessarily have to be proved, we are constrained to hold that the court's charge in fact placed the burden on

1. The electroencephalograph report notes that penetration of one or two fragments into the brain was possible.

2. This evidence was inadmissible on the issue of the defense of insanity because appellant's notice of intent to offer such evidence was untimely filed under Article 46.03, § 2, V.A.C.C.P. See Opinion on original submission.

3. The general rule announced in *Cowles* is that evidence falling short of establishing insanity will not be admitted on the issue of guilt.

   "An exception to this rule is where specific intent is an *element of the offense* for which the accused is being tried, as in the different degrees of murder and the 'with intent' crimes. Annotation, 22 A.L.R.3d 1253, and cases there cited; *People v. Taylor*, 220 Cal. App.2d 212, 33 Cal.Rptr. 654. The reasoning behind the exclusion of this type of evidence is that if the accused can distinguish between right and wrong and understands the nature and consequences of his acts, and is therefore legally sane, the fact that he suffers from a weak mind or from emotional problems does not excuse his act, and is consequently imma-

   terial on the question of guilt and would only confuse the jury if admitted into evidence." (Emphasis in original.)
   510 S.W.2d at 610. At the time *Cowles* was decided the operative test for determining insanity as a defense in Texas was the M'Naghten Rule, which inquired whether an accused at the time of the offense could distinguish right from wrong as to the conduct with which he is charged. At the time of the instant prosecution, which commenced June 19, 1978, the operative test could be found in V.A.P.C., § 8.01(a), which read:

   "(a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated."
   This different standard for determining insanity does not change the general rule that once insanity has been excluded from the case, evidence of diminished mental capacity will not be admitted. Appellant here argues that the evidence adduced in his bill of exceptions should come in under the exception to the general rule noted above.

the State to prove intent beyond a reasonable doubt.

Nevertheless we decline to accept appellant's argument that because intent was an issue in the case, evidence of possible impairment of mental functions was admissible at the guilt phase of the trial.

Appellant invokes the dicta set out in *Cowles v. State,* supra, at 610, that "where specific intent is an *element of the offense* for which the accused is being tried, as in different degrees of murder and the 'with intent' crimes [,]" evidence of mental impairment which does not rise to the level of insanity is nevertheless admissible to negate the specific intent and so reduce the magnitude of the crime. As stated in 22 A.L.R.3d 1228, to which both appellant and the State draw our attention:

> "[S]everal states have adopted the so-called theory of diminished responsibility. This theory is that since certain crimes, by definition, require the existence of a specific intent, any evidence relevant to the existence of that intent, including evidence of an abnormal mental condition not constituting legal insanity, is competent for the purpose of negativing that intent. Although the doctrine is often referred to as the doctrine of 'diminished responsibility,' the actual purpose of such evidence is to establish, by negating the requisite intent for a higher degree of offense, that in fact a lesser degree of the offense was committed."

*Id.,* § 5, at 1238.

Many jurisdictions that recognize different degrees of murder based upon whether or not "deliberation" and "premeditation" are present will admit evidence of abnormal mental capability where it may contribute to a reduction from first to second degree murder. *Id.,* § 7, at 1246. However, V.A.P.C., § 19.02 recognizes no such "degrees" of murder. Hence, the doctrine of diminished responsibility will not justify admission of appellant's proffered evidence to establish a lesser "degree" of murder.

Other jurisdictions have held evidence of abnormal mental capability not amounting to insanity admissible to negate the element of malice aforethought. 22 A.L.R.3d, § 8, at 1252. Though malice aforethought is also not an express element under § 19.02, supra, we have held that when "sudden passion arising from an adequate cause," see V.A.P.C., § 19.04, is raised as an issue in a murder prosecution, it will function "in the nature of a defense to murder that reduces the offense to voluntary manslaughter." *Braudrick v. State,* 572 S.W.2d 709, 710 (Tex.Cr.App.1978). Were we to find that appellant's proffered evidence contributed to a showing of "sudden passion arising from an adequate cause," the doctrine of diminished responsibility would mandate that the evidence be admitted. However, the evidence presented in appellant's bill of exceptions did nothing to advance this issue.

The import of appellant's proffered evidence is that the injury to his head possibly affects his impulse control, and that he seems to lack emotional contact with his surroundings. All that can be inferred from this evidence is that appellant may be more susceptible than the normal person to acting under the influence of a suddent passion. It does not further the proposition that appellant did in fact act under the influence of such a passion on the night of the offense.

Furthermore, introduction of such evidence would only confuse the jury in seeking to apply the charge on voluntary manslaughter that was given by the trial court. The court charged:

> " 'Adequate cause' means cause that would *commonly* produce a degree of anger, rage, resentment, or terror *in a person of ordinary temper,* sufficient to render the mind incapable of cool reflection." [4]

See § 19.04(c), supra. As previously observed, the thrust of the evidence pertain-

---

**4.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

ing to appellant's head injury is that he is *not* a person of ordinary temper. The statutory definition of voluntary manslaughter does not contemplate what would constitute adequate cause from the perspective of an individual whose impulse control is impaired. See *Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Cr.App.1983). Lack of normal impulse control is simply not a circumstance recognized by the Legislature to diminish the criminal responsibility of an accused or reduce his crime to a lesser included offense.

We therefore find that, the issue of appellant's sanity having been taken out of the case, appellant's proffered evidence was not material on the issue of his guilt, and its introduction at the guilt phase at trial would only have confused the jury— the very evil sought to be averted in *Cowles v. State,* supra. The trial court did not err in refusing to admit this evidence and the panel was correct in overruling appellant's contention in this regard on original submission.[5]

▄▄▄ Appellant also argues that his conviction should be reversed because the trial court erroneously admitted the testimony of Officer Ray Long at the punishment phase of the trial. Long testified, in essence, that he was a Patrol Sergeant with the Orange Police Department, that he had "known of" appellant for approximately two months, and that he knew appellant's reputation in the community for being a peaceable and lawabiding citizen to be bad. Prior to so testifying, Long was taken on voir dire by appellant, wherein it was established that the basis for his knowledge of

appellant's reputation was a discussion with Charles Gans. The voir dire is substantially set out in our opinion on original submission and will not be reproduced here.

However, we do think it necessary to place Long's voir dire testimony in context. Appellant was found guilty of the shooting death of Laura D. Smith. The shooting occurred on the night of September 28, 1978, when appellant forced his way into the home of the deceased in an effort to see her daughter, Willie Etta Smith. Though not married to appellant, Willie Etta Smith had borne one child and miscarried another by him. There was evidence that a few days prior to the offense, Willie Etta Smith and appellant had taken a blood test preparatory to getting married, though Smith testified that her participation in this was coerced. Sometime after the offense was committed, and after Willie Etta Smith had married Charles Gans, appellant apparently threatened their lives. Long testified on voir dire that it was Gans' communication of this particular threat which constituted the sole foundation for his knowledge of appellant's reputation.

On original submission this ground of error was overruled in reliance on *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.App. 1972), wherein it is said that "[a]lthough the officers could not testify to specific acts, it is not improper for them to discuss specific acts with other persons as a basis for determining what appellant's reputation is in the community." *Id.,* at 726–727. It is clear from the context of *Crawford*

5. At the hearing on appellant's motion for new trial and in his motion for rehearing appellant alludes to V.T.C.A. Penal Code, § 19.06 as authority for the admissibility of his proffered evidence. Section 19.06 reads:

"In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

Assuming arguendo that the evidence of a possible defect of impulse control was a "relevant ... circumstance[ ] going to show the condition of the mind of the accused at the time of the offense[,]" and therefore admissible under this provision, failing to admit it would have been harmless. This is so because, while it may have been relevant, nevertheless, as we have demonstrated in our rejection of such evidence under the doctrine of diminished responsibility, it was not material to the establishment of any operative issue in the guilt phase of the trial.

and the case cited as authority therein, see *Frison v. State*, 473 S.W.2d 479 (Tex.Cr. App.1971), that the testimony of the police officers in those cases was not based *solely* on discussions as to specific acts. It is imperative that a reputation witness has discussed the accused's reputation with members of the community as a basis for his opinion that such reputation is bad. *Mitchell v. State*, 524 S.W.2d 510 (Tex.Cr. App.1975). We read *Crawford* to stand for the proposition that discussion of specific acts which occurs during the course of conversation as to an accused's reputation in the community will not serve to taint or invalidate the officer's understanding of that reputation. This is not the same, however, as holding that reputation testimony may be grounded solely on the officer's knowledge of specific acts.

■■ We cannot state the matter any more clearly than did the Dallas Court of Appeals in *Moore v. State*, 663 S.W.2d 497, 500 (Tex.App.—Dallas 1983):

"Reputation testimony is necessarily based on hearsay, but is admitted as an exception to the hearsay rule. For reputation testimony to be an exception to the hearsay rule it must meet two basic criteria: (1) that there is some necessity for the introduction of the testimony; (2) that the testimony has some circumstantial probability of trustworthiness. 5 Wigmore, Evidence § 1580, 1611, & 1612 (Chadbourn rev. 1974); 1A R. Ray, Texas Law at Evidence Civil and Criminal § 1321 (Texas Practice 3d. ed 1980).[6] The trustworthiness of reputation testimony stems from the fact that a person is observed in his day to day activities by other members of his community and that these observations are discussed. Over a period time [sic] there is a synthe-

sis of these observations and discussions which results in a conclusion as to the individual's reputation. When reputation is based solely on specific acts, this synthesis is lost, as well as its reliability. When reputation testimony is given by police officers who have investigated an individual's offenses and by victims of an individual act who have spoken only with others who are also victims, it is obvious that the witnesses' conclusions as to the appellant's reputation will be slanted against the individual and will not have the trustworthiness implicit in the exception to the hearsay rule. The conclusion of such witnesses as to the reputation may be vastly different from those who have had the day to day contact within the community envisioned in the traditional exception to the hearsay rule for reputation testimony. What is actually occurring with testimony of this type is that a witness takes the specific acts of the individual and then infers what the reputation of the person would be. In this respect, this evidence could easily be fabricated and, thus, loses its reliability. Consequently, if this were an open question, we would likely hold that such testimony was inadmissible." [7]

The instant case serves as a perfect example of the reason that knowledge of specific acts alone as a basis for reputation testimony violates the rationale for admitting such testimony in the first place. Long based his knowledge of appellant's reputation on a single "terroristic threat" which was related to him by Gans. While strictly speaking this incident was not part of the transaction for which appellant was being prosecuted, both incidents were a product of the tumultuous relationship between appellant and Willie Etta Smith.

**6.** Section 1321 states:
"The reasons for this [hearsay] exception are two: (1) The inherent difficulty of obtaining any satisfactory evidence of the desired fact other than proof of tradition and reputation creates a necessity for this evidence. (2) The fact that a prolonged observation and discussion of certain matters of general interest by a whole community will sift possible errors and bring the result down to us in a

fairly trustworthy form furnishes a guarantee of correctness."

**7.** The court of appeals felt constrained by *Romo v. State*, 593 S.W.2d 690 (Tex.Cr.App.1980) to allow knowledge of specific acts alone to serve as a basis for reputation testimony. To the extent that it conflicts with our present disposition, *Romo v. State*, supra, is overruled.

**314**

Long's testimony could not possibly constitute the kind of synthesis of observation and discussion in the community which is the basis for deeming reputation evidence reliable. His testimony was not indicative of the climate of opinion in the community. Rather, it reflected a single unproven allegation made by an obviously biased third party. Standing alone, knowledge of such a specific act will not qualify a witness to testify that he knows the reputation of an accused to be bad, and we so hold. The testimony of Officer Long was erroneously admitted.

We conclude, however, that admission of this testimony was harmless. Though Long was the only witness to testify on behalf of the State at the punishment hearing, his testimony was concise and unembellished. The jury never learned of the extraneous incident which was the purported basis for this testimony. Appellant himself offered no evidence in his own behalf during this proceeding.[8] In final argument the prosecutor did not mention Long's testimony. Instead he emphasized the violent circumstances surrounding the offense [9] and made a general plea to the jury to fulfill its role in the law enforcement process by giving appellant a life sentence. Prior to the argument on punishment the prosecutor stated for the record that the State would have no objection to appellant reopening the case to present evidence on his eligibility for probation, but this invitation was expressly declined by appellant. On this state of the record we conclude that admission of the testimony was harmless beyond a reasonable doubt. See *Mitchell v. State*, supra.

Appellant's motion for rehearing is overruled.

---

**8.** This, in spite of the State's concession at trial that the evidence as to appellant's possible problem with impulse control, while not admissible during guilt/innocence, could surely be produced as evidence in mitigation of punishment at the punishment phase of the trial. See *Cowles v. State*, supra.

**9.** The evidence at guilt/innocence showed that after the shooting took place, appellant obtained a jack from his car and proceeded to shatter

TEAGUE, Judge, dissenting.

Originally, this cause was submitted only to a panel of three members of this Court.[1] A majority of that panel rejected appellant's eleventh ground of error, that the trial court had erred in permitting Ray Long, a long time Orange police officer, to testify at the punishment stage of his trial as a "bad" reputation witness for the prosecution and against appellant. Appellant asserted that because the State did not establish that Long was a qualified "bad" reputation witness, Long should not have been permitted to testify for the prosecution. The majority disagreed.

I dissented with opinion, stating therein why appellant was correct and why the majority of the panel's holding that Ray Long, the State's sole reputation witness, was established to be qualified to testify to appellant's "bad" reputation was legally erroneous.

Today, the majority of this Court holds that Long should not have been permitted to testify as a "bad" reputation witness for the prosecution, because the State did not establish that he was qualified to so testify. To me, in light of what damage the majority panel opinion might have in the future caused our criminal jurisprudence system, the majority's holding that Long should not have been permitted to testify, because the State did not establish that he was qualified to testify as a "bad" reputation witness for the prosecution, is indeed a breath of fresh air. In light of the majority's holding, it is now not necessary for members of the bench and bar to mutilate their leading works on evidence, by tearing out the chapters therein on how a State's "bad" reputation witness may be qualified,

virtually everything in the house that was made of glass. He then smashed the windshields and windows of two cars parked in the driveway of the residence before getting into his own car and driving to his sister's house down the street. There he admitted to his brother-in-law that he had shot the deceased.

---

**1.** This Court has not had panels since the fall of 1981.

which is what I believe that the majority of the panel's opinion implicitly commanded.

Notwithstanding my agreement with the majority's holding, that because the State did not establish that Long was qualified to testify as a "bad" reputation witness for the prosecution, he should not have been permitted to testify for the prosecution, but because I believe that a majority of this Court has implicitly now written a new test for harmless error, or has unintentionally or inadvertently ignored the old test, I am still compelled to dissent in this cause.

The majority opinion incorrectly holds that the error was harmless *as to both* guilt and punishment. In light of the record, which I have carefully read, and the test that formerly existed to make the determination whether erroneously admitted evidence or testimony is harmless, which test applies to both guilt and punishment, I cannot agree that in this instance the error was harmless beyond a reasonable doubt as to the punishment that was assessed by the jury.

The test for harmless error, which is not set out in the majority opinion, is not whether a conviction could have been had with the improper evidence or testimony, nor is it whether the punishment that was assessed would not have been assessed without the improper evidence or testimony. Instead, the test is whether there is *a reasonable possibility* that the erroneously admitted evidence or testimony might have contributed either to the conviction or to the punishment that was assessed. *Garrett v. State*, 632 S.W.2d 350, 354 (Tex.Cr. App.1982).

I agree with the majority that in this instance there is not *a reasonable possibility* that the error contributed to the jury's

finding appellant guilty. However, I am unable to agree with the majority that there is not *a reasonable possibility* that such error contributed to the jury's decision to assess appellant's punishment at eighty-five (85) years' confinement in the penitentiary, which number of years comes perilously close to being the absolute maximum that the jury could have assessed appellant as his punishment. Emphasizing the negative, when the jury saw the positive, as the majority does in order to reach its conclusion that the error in this instance was harmless, although such methodology is helpful, I find in this instance that it is an unacceptable way of answering the question whether the error was harmless.

The record reflects that in the presence of the jury the prosecution established that Long was no ordinary "bad" reputation witness for the prosecution. Long testified that he had been employed by the Orange Police Department for over nine years and had been a patrol sergeant for approximately five years. Not only did Long occupy an important position in the City of Orange, he also testified that he lived in the same general community where appellant lived. Given these facts, is there not a reasonable possibility that Long's erroneously admitted testimony contributed to the jury's decision to assess appellant's punishment at eighty-five (85) years' confinement in the penitentiary? I believe so.

I find it rather interesting that Judge Clinton, the author of the majority opinion, just recently stated the following in *Clemons v. State*, 605 S.W.2d 567 (Tex.Cr.App. 1980),[2] a unanimous panel opinion he authored for the Court: "Under the facts of this case the 25 year sentence assessed by the jury in this cause is not unusual, but that is not the question presented here.

**2.** The facts in *Clemons v. State*, supra, from the standpoint of the defendant in that cause, are egregious. The facts reflect that the defendant and two others, one of whom was her husband, at both gun and shotgun points, robbed an employee of the Austin Municipal Auditorium of his owner's money and robbed him of his personal property. Acting upon instructions from her husband hijacker, the defendant shot the concessionaire in the back. Thereafter, think-

ing the concessionaire was dead, the trior fled. The defendant and her husband were arrested in Kansas City, where they had apparently gone to commit more armed robberies. But for a miracle, one or more of the arresting police officers would have been shot to death by the defendant. Your guess is as good as mine why this "rational" jury chose to mete out a mere twenty-five (25) years.

The question is whether or not we can say that this evidence was harmless beyond a reasonable doubt given the number of years assessed by the jury." (572). In that case, Judge Clinton found for a unanimous panel that the error was not harmless as to the punishment assessed.

In this instance, because of the punishment of eighty-five (85) years that was assessed, and in light of Long's status in the community, as well as the fact that he lived in the same general community as did appellant, I cannot agree that the above question, whether the error was harmless, should be answered in the negative, and therefore must respectfully dissent to the majority's holding that the error was harmless beyond a reasonable doubt as to the punishment that was assessed by the jury. If the error was not harmless in *Clemons v. State*, supra, how on earth is it harmless in this case?