IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1655-03





KENNETH WAYNE JACKSON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Price, Johnson, Holcomb, and Cochran, JJ, joined. Keasler, and Hervey, JJ.,
concurred. Womack, J., did not participate.


 


 Appellant was convicted of murder and sentenced to sixty years' imprisonment. 
Texas Penal Code Sec. 19.02 (b)(1). Appellant appealed the trial court's limitation of his
use of mental-illness testimony. The court of appeals affirmed the conviction. Jackson v.
State, 115 S.W.3d 326 (Tex. App.-Dallas 2003). We granted review to determine
whether the doctrine of diminished capacity exists in the jurisprudence of Texas. We will
affirm.


FACTS


 Appellant and his older brother, Eric, arrived home between 4:00 and 5:00 in the
morning after an evening out with friends. Their sister, Tina, heard her brothers come in
and went into the living room to talk to them. She testified that Appellant wanted to wake
up his mother, but Eric would not allow him to go into her bedroom. Eric blocked the
door to the bedroom and restrained Appellant from entering. The brothers began to fight,
pushing each other, hitting each other and pulling each other's hair. The fighting
awakened their mother, and she came into the living room and told Appellant and his
brother to go to bed. Tina testified that they continued to argue, and Eric asked her to call
the police because Appellant was becoming violent and would not stop fighting. She also
stated that Appellant threatened his brother and told him that he was going to get him if
he went to sleep. Tina did not call the police, but the fighting eventually calmed down.
Appellant went to sleep on the couch in the living room, and Eric went to sleep in their
mother's bedroom. Several hours later, Tina drove their mother to work. While his
mother and sister were out of the house, Appellant went into the kitchen, got a hammer,
entered his mother's bedroom where Eric was sleeping, and hit him in the head with the
hammer. (1) Appellant returned the hammer to the cabinet in the kitchen and then called
911. The first police officer to arrive testified that Appellant told them he didn't know
what happened, but he thought his brother had been shot.

 At trial, Appellant presented testimony regarding his mental illness. His mother
and sister testified that Appellant had "spells" and exhibited strange behaviors including
talking to himself, hiding food in his bedroom, and hanging clothes on the walls and
windows rather than in the closet. His mother testified that doctors had told her that
Appellant was capable of killing, and had instructed her to call the police whenever
Appellant acted violently toward his brother. When the family called the police,
Appellant was usually released the next day, but on one occasion he was admitted to
Timberlawn mental hospital after he pulled a knife on his brother. Tina testified that
Appellant had been diagnosed as being a paranoid schizophrenic. She stated, "I don't
think Kenneth thinks about the things that he is doing before he does them. I don't think
he thinks about it. I don't think he even knows what the circumstances would be. 
Sometimes Kenneth is - he's fine, and the next minute, it's like he's another person."

She also stated, "I don't think that Kenneth meant to kill him. I think he just wanted to
hurt him, because, you know, he was- they had been fighting."

 The defense called forensic psychiatrist Dr. James Grigson to testify. The State
requested a hearing under Rule of Evidence 705(b), to examine the facts upon which the
doctor based his opinions. The trial court denied the State's request, but limited the
mental-illness testimony, stating that it would not allow an insanity defense to be raised at
that late date without notice to the State. The following is the testimony of the defense
psychiatrist regarding Appellant's history of mental illness. 

[Defense] Would you please explain to the ladies and gentlemen of the Jury
your findings from the-tell us a little bit about his history, some of
the findings that-where he's been located, et cetera?


[Dr. Grigson] He's been seen at Parkland emergency room, and also in 1998, he
was hospitalized at Timberlawn Psychiatric Hospital here in Dallas
for about a week. In his history it stated that he became mentally ill
somewhere around about age 14. He has been diagnosed as
schizophrenic and as bipolar disorder, both psychotic episodes.


[Defense] Explain to the ladies and gentlemen of the jury what you mean by
schizophrenic?


[Dr. Grigson] Schizophrenia is one of our more severe mental illnesses. The
individual has gross impairment in terms of interpersonal
relationships, the way they get along with other people, and gross
impairment in terms of reality testing. They misperceive what's
going on around them.


[Defense] What about paranoia?


[Dr. Grigson] Paranoid is a descriptive term of a type of schizophrenia where the
individual that is suffering from paranoid schizophrenia usually
believes that people are plotting against them or trying to do
something to them, trying to harm them in some way.


[Defense] What about bipolar?


[Dr. Grigson] Bipolar is another severe mental illness. The individuals may only
have manic states, or they may only have depressive states, or they
may have alternating manic and depressive states.


[Defense] What about mental retardation, sir?


[Dr. Grigson] Mental retardation is where the individual has an IQ below 70.


[Defense] Okay. Was there any-in his history or your examination, was there
any mental retardation that you can recall?


[Dr. Grigson] No, sir, there's not any.


[Defense] Pass the witness, your honor.

 

 [CROSS EXAMINATION]


[State] Dr. Grigson, you've had an opportunity to review his various
medical files?


[Dr. Grigson] I did.


[State] And did you notice that he in some-in his files and on occasions, he
had-the Defendant, Mr. Jackson, had a tendency to become violent?


[Dr. Grigson] He has.


[State] With his brother or with his dad or other family members?


[Dr. Grigson] That's correct.


[State] And, in fact, that's the way-is that a way that some people with
schizophrenia or have these psychotic episodes, that's how it
manifests itself where they actually become violent?


[Dr. Grigson] It can happen in individuals with schizophrenia or bipolar, or it can
happen in an individual that has neither.


[State] And they can become really violent. I mean, on some occasions he
was known to have pulled a knife on his brother, or hit his brother,
or hit his dad with a bat?


[Dr. Grigson] That's correct.


[State] And you-you say that you analyzed him on May 15, what would be
ten days after the offense date?


[Dr. Grigson] Yes, sir, I did.


[State] And it's your opinion that he was competent?


[Dr. Grigson] Right. He had sufficient present mental ability to consult with his
attorney with a reasonable degree of rational understanding, and he
had a rational, as well as a factual understanding regarding the
proceedings against him. Therefore, it was my opinion that he was
competent at that time to stand trial.


[State] And he was still competent in June when you interviewed him?


[Dr. Grigson] Yes, sir, he was.


[State] And that's the last time that you talked to him or interviewed him?


[Dr. Grigson] Yes, sir, it is.


[State] And I mean, you're not here telling the Jury that he's insane or didn't
know what he was doing?


[Dr. Grigson] No. He was sane at the time. He was aware of what he was doing.


[State] And he knew the difference between right and wrong?


[Dr. Grigson] Yes, sir, he did.


[State] Okay. So he was-he was sane, and he was competent in your
opinion?


[Dr. Grigson] Yes, he was.


[State] Okay. That's all I have.

 

 In closing argument, the defense attempted to argue that the jury should find that 
Appellant lacked the mental capacity to intentionally or knowingly cause bodily injury. 
The State objected to the improper argument, and the objection was sustained. The jury
found Appellant guilty, and he was sentenced to sixty years' imprisonment.

COURT OF APPEALS

 Appellant appealed, arguing in part that his due process rights were violated
because the jury was not allowed to consider evidence of diminished capacity to negate
the element of mens rea. Appellant relies on an exception to the rule set out in Cowles v.
State, 510 S.W.2d 608 (Tex. Crim. App. 1974), that evidence of mental illness short of
the inability to distinguish right from wrong is not admissible at the guilt stage of the
trial. (2) Although Cowles involved a non-specific-intent crime, the exception stated that
such evidence may be admissible when specific intent is an element of the offense. The
court of appeals cited Wagner v. State, 687 S.W.2d 303 (Tex. Crim. App. 1985), in which
we referred to the exception from Cowles as "dicta" and stated that lack of impulse
control does not diminish criminal responsibility. Id. at 311. The court of appeals
concluded that, because there is no diminished-capacity defense in Texas, the trial court
did not err in failing to allow the jury to consider appellant's mental-illness evidence for
the purpose of negating mens rea. Jackson v. State, 115 S.W.3d at 328. 

 Appellant filed a petition for discretionary review stating that the holding of the
court of appeals conflicts with our holdings in Penry v. State, 903 S.W.2d 715 (Tex.
Crim. App. 1995), Cowles, and Wagner. Appellant reasons that past opinions have
confused the doctrine of "diminished capacity" with the affirmative defense of
"diminished responsibility," and that diminished capacity is recognized in Texas. Finally,
Appellant argues that the U.S. and Texas Constitutions require that a defendant be
allowed to introduce evidence of diminished capacity. We granted review to determine
whether the doctrine of diminished capacity exists in the jurisprudence of Texas. 

ANALYSIS

 This case does not really present us with a reason to determine whether the
doctrine of diminished capacity exists in Texas because the evidence of mental illness in
this case does not negate mens rea. Rather, the evidence presented an excuse for the
crime, i.e., that Appellant killed his brother because he was so paranoid that he thought
his brother was out to get him. In fact, this evidence makes it even more apparent that
Appellant intended to cause serious bodily injury or death to his brother. The evidence of
appellant's paranoia simply provides a motive for the intentional act. The evidence
presented was the type of excuse-based evidence that would be raised as an affirmative
defense. As even Appellant acknowledges, Texas law does not recognize a lesser form of
the insanity affirmative defense. However, we will address Appellant's claims.

 First, we disagree with Appellant's contention that the opinion of the court of
appeals conflicts with our opinion in Wagner. As in the case before us, Wagner did not
raise an insanity defense. He did, however, want to admit evidence of a physical injury
which may have caused impaired mental function and lack of impulse control. We stated
that the evidence may have been admissible if it showed that Wagner acted with sudden
passion arising from an adequate cause. Wagner, 687 S.W.2d at 311. However, because
it did not, we held that admitting evidence of impaired mental function at the guilt phase
of the trial would have confused the jury and therefore, it was not admissible. Id. at 312. 
We note that this has changed because sudden passion is now a punishment issue. As a
result, even the part of Wagner which states that the doctrine of diminished capacity
might require the admission of evidence of sudden passion arising from an adequate
cause now would apply only to the punishment phase of trial and does not require
evidence of mental illness falling short of insanity to be admitted at the guilt phase. 
Under Penal Code section 19.02(d), sudden passion and adequate cause are raised at the
punishment stage of a trial to reduce the offense to a second-degree felony. (3) 

 We additionally disagree with the Appellant that the holding of the court of
appeals conflicts with our holding in Penry. As in the case before us, Penry presented
evidence of his mental impairments at trial and emphasized this evidence in closing
arguments. Penry argued that the charge to the jury should have included an instruction
to consider abnormal physical or mental conditions when deciding the issue of intent. 
Penry, 903 S.W.2d at 753. We stated that there was no reason to conclude that the jury
failed to consider Penry's proffered evidence and held that "[a] specific instruction
calling attention to the evidence on appellant's impaired mental abilities was unnecessary,
and might have inappropriately vested this evidence with a disproportionate legal
significance in the eyes of the jury." Id. at 754. Judge Maloney wrote a concurring
opinion agreeing that the instruction requested by Penry would have been an improper
comment on the weight of the evidence and was properly denied. He then explained the
difference between the diminished-capacity affirmative defense and the presentation of
evidence of diminished capacity to negate mens rea. Id. at 767-68. Stating that past cases
have confused the issues, Judge Maloney emphasized that most state and federal courts
allow defendants to present evidence of diminished capacity to negate mens rea. Id. at
768-69.

 As for Appellant's argument that the 8th and 14th Amendment of the U.S.
Constitution and the right to due course of law under the Texas Constitution require that a
defendant be allowed to introduce evidence of diminished capacity, we again fail to see
how this applies to the facts of this case. While barring, excluding, or prohibiting all
evidence relating to a mental condition may violate a defendant's rights in certain cases,
in the case before us, no such violation occurred. 

DIMINISHED CAPACITY


 The court of appeals correctly stated that Texas does not recognize diminished
capacity as an affirmative defense i.e., a lesser form of the defense of insanity. In
contrast, the diminished-capacity doctrine at issue in this case is simply a failure-of-proof
defense in which the defendant claims that the State failed to prove that the defendant had
the required state of mind at the time of the offense. To counter the State's evidence of 
the defendant's state of mind, the defense wishes to present evidence that the defendant
has mental or physical impairments or abnormalities and that some of his abilities are
lessened in comparison to someone without such problems. 

 As with the other elements of the offense, relevant evidence may be presented
which the jury may consider to negate the mens rea element. And, this evidence may
sometimes include evidence of a defendant's history of mental illness. Texas Code of
Criminal Procedure Art. 38.36(a) states that:

 In all prosecutions for murder, the state or the defendant shall be
permitted to offer testimony as to all relevant facts and
circumstances surrounding the killing and the previous relationship
existing between the accused and the deceased, together with all
relevant facts and circumstances going to show the condition of the
mind of the accused at the time of the offense. 


However, this evidence must still meet the admissibility requirements of Rule of
Evidence 403. In Smith v. State, 5 S.W.3d 673 (Tex. Crim. App. 1999), we stated that
evidence admissible under Article 38.36(a) may be excluded under Rule 403 if the
probative value of the evidence "is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Even if
evidence is relevant to an element of the offense, the trial court still must determine
whether the evidence is admissible. Therefore, the trial judge has discretion to determine
whether evidence of mental illness may be presented to negate the element of mens rea,
or whether the evidence should be excluded on special grounds. If such evidence is
admitted, the trial judge additionally has the discretion to determine whether the evidence
supports a lesser-included-offense instruction. (4) In cases where such evidence was not
admitted, it may be presented in the punishment phase in order to reduce the sentence
assessed by the jury.

 Appellant has not indicated what evidence, if any, he was prevented from
introducing. He was able to present extensive evidence regarding his mental illness, his
relationship with the victim, and his frame of mind on the night of the offense. There is
no indication in the record that he was prevented from presenting any evidence at all. 
Therefore, we disagree with Appellant's assertion that he was prevented from introducing
evidence relevant to whether he possessed the requisite mens rea. The State presented
evidence that Appellant intentionally and knowingly caused the death of his brother. 
Appellant attempted to negate this evidence by introducing evidence of his history of
mental illness through the testimony of his mother and sister, as well as the defense expert
witness, Dr. Grigson. Appellant himself testified about his frame of mind on the night of
the offense. The jury was able to hear all of this evidence, determine the weight of the
evidence, and choose whether or not Appellant possessed the requisite mens rea to
commit this offense. The jury believed that he did. The only thing Appellant was
prevented from doing is arguing that the jury should find that he did not have the capacity
to make the decision to intentionally and knowingly cause bodily injury and thus should
find him not guilty. However, presenting evidence of mental illness does not then allow
the defense to argue that the defendant is absolutely incapable i.e., does not have the
capacity to intentionally or knowingly perform an act. There is simply no defense
recognized by Texas law stating that, due to the defendant's mental illness, he did not
have the requisite mens rea at the time of the offense because he does not have the
capacity, or is absolutely incapable of ever forming that frame of mind. There is no
indication of an abuse of discretion in this case. 

 In conclusion, the judge may determine whether mental-illness evidence may be
presented, and if it is presented, may determine whether it raises the issue of a lesser-included offense. Then, the jury may decide if the evidence lessens the defendant's
culpability by finding him guilty of a lesser-included offense if presented at the guilt
phase of trial or by assessing a lesser sentence at the punishment phase. 

 In this case, the judge admitted evidence of mental illness and decided that it did
not raise the issue of a lesser-included offense. The jury considered the evidence and
believed that the State proved each element of the offense beyond a reasonable doubt,
including the mens rea of intentionally and knowingly. The judgment of the court of
appeals is affirmed.

 Meyers, J.

Delivered: April 13, 2005

Publish

1. Appellant claimed he hit his brother only once but the medical examiner who performed
the autopsy testified that the injuries to the skull indicated that the victim had been struck twice.
2. Note that at the time of the Cowles decision, Texas used the M'Naghten Rule to
determine the defense of insanity. The M'Naghten Rule asked whether the accused could
distinguish right from wrong at the time of the offense. Texas Penal Code Section 8.01(a) now
states that "It is an affirmative defense to prosecution that, at the time of the conduct charged, the
actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." 
This is also different from the insanity statute at the time of the Wagner decision, which included
"or was incapable of conforming his conduct to the requirements of the law he allegedly
violated." 
3. In Bradley v. State, 688 S.W.2d 847, 853 n.13 (Tex. Crim. App. 1985), we invited the
legislature to make sudden passion either an affirmative defense or a punishment issue. By a
1994 Legislative amendment to Penal Code Sec. 19.02, they chose to make it a punishment issue. 
4. In the case before us, the court of appeals correctly held that, "There was no evidence
here that if appellant was guilty, he was guilty only of a lesser mens rea. Thus, we conclude the
trial court did not err in refusing to instruct on involuntary manslaughter and criminally negligent
homicide." Jackson, 115 S.W.3d at 330-31.