Nolen Leroy MOORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–82–00494–CR.

Court of Appeals of Texas, Dallas.

Nov. 1, 1983.

Ross Teter, Dallas, for appellant.

Henry Wade, Dist. Atty., Molly Meredith, Asst. Dist. Atty., for appellee.

Before AKIN, SPARLING and GUILLOT, JJ.

AKIN, Justice.

This appeal is from a conviction of burglary of a habitation for which the appellant was assessed a life sentence. The appellant contends: (1) that reputation testimony was improperly introduced at the punishment stage of the trial; (2) that he was improperly denied a hearing outside the presence of the jury to test the validity of a photographic line-up from which certain reputation witnesses identified the appellant; (3) that the trial court erred in failing to charge the jury that it should impose no sentence "which is so excessive and disproportionate to the offense as to constitute cruel and unusual punishment;" and (4) that the court erred when it failed to charge the jury that it must assume that the appellant would serve each and every day of any sentence imposed. Because appellant's contentions lack merit, we affirm.

The appellant was charged with intentionally entering the habitation of the victim with the intent to commit rape and theft. The offense occurred when the vic-

tim was preparing to leave for work. A man entered her apartment, demanded money from her, which she gave him, and ordered her to remove her clothing. After leading the victim into her bedroom, the assailant repeatedly raped and orally sodomized the victim. The assailant then ordered the victim to take a shower. While in the shower, the police arrived but the assailant escaped through a kitchen window. A short time later, however, the appellant was apprehended by the police, was returned to the victim's apartment, and was identified by the victim as her assailant.

At the punishment stage of the trial, nine witnesses testified that the appellant's reputation in the community for being a peaceful and law-abiding citizen was bad. These witnesses included two police officers, a rape counselor from the Fort Worth Police Department, an investigator for the appellant's former employer and five women who had also allegedly been raped by the appellant. Before these witnesses were permitted to testify before the jury, a hearing was held to test their qualifications. The questioning by the appellant's counsel, the State's attorney and the court consumes a hundred pages of the record. The testimony at this hearing showed that the appellant had apparently committed several dozen rapes. The victims stated that the basis of their testimony stemmed from their own experience of being raped by the appellant, from the experiences of others who also claimed to have been raped by appellant, from police officers who told them about other rapes and past criminal activity and finally what people in the community thought. The comments from people in the community appear to be from people who did not know the appellant personally but based their determination of his reputation from reports of his criminal activity. The police officers testified that the basis for their determination of the appellant's reputation also stemmed from what victims and police officials investigating other rape charges against appellant told them. The officers also stated that an investigator for appellant's former employer told them that he had embezzled money. One officer also

stated that he had also spoken to the appellant. The rape counselor spoke to victims, to law enforcement officials who thought the crimes were being committed by the same person and to people in the community who were generally concerned about the wave of rapes. Apparently many of the counselor's conversations occurred when there were no specific suspects and mere speculation existed that one rapist had committed all of the offenses. Finally, an investigator for the Southland Corporation stated that he had investigated allegations that the appellant embezzled money while employed by Southland. This witness stated that he had concluded that the appellant was hostile to authority, and that he had reached this conclusion from talking with the appellant's co-workers, supervisor, and people who had associated with him or had been to his home. The investigator also stated that he had heard that the appellant had raped a number of women but that he had acquired this information from what he had read in the newspaper.

The appellant contends that the testimony of these witnesses as to the appellant's reputation was inadmissible because none of these witnesses was familiar with appellant's reputation in the community in which he resided. The appellant defines community as the town in which he lived. The appellant also argues that the witnesses were basing their testimony on specific acts which they had heard the appellant had committed, and that this was an improper basis for establishing the appellant's general reputation in his community for being a peaceful and law-abiding citizen. Although we are doubtful that the testimony in question is the type envisioned under the traditional basis for the exception of reputation testimony to the hearsay rule, authority exists from the Court of Criminal Appeals which authorizes reputation testimony of the type in this case. In this respect, the Court of Criminal Appeals has held that reputation witnesses need not base their testimony limited to information which they had heard only in the town where the defendant lived.

■ The reputation witnesses' conclusions about the appellant's reputation as a peaceful and law-abiding citizen were based primarily upon learning that the appellant had committed numerous rapes. Thus, the witnesses' conclusions as to the defendant's reputation were based on specific acts committed by the appellant, rather than generally knowing the appellant's reputation from having lived within the same community with him over a period of years. The Court of Criminal Appeals has noted on a number of occasions that "it is not improper for a witness to discuss specific acts with other persons as a basis for determining what a defendant's reputation is in the community." *Romo v. State,* 593 S.W.2d 690 (Tex.Cr.App.1980); *see also Stephens v. State,* 522 S.W.2d 924 (Tex.Cr.App.1975); *Ables v. State,* 519 S.W.2d 464 (Tex.Cr.App. 1975); *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.App.1972); *Frison v. State,* 473 S.W.2d 479 (Tex.Cr.App.1971); *Sanchez v. State,* 398 S.W.2d 117 (Tex.Cr.App.1966). These specific acts must be acts other than the one with which the appellant is presently charged. The witnesses in all of these cases testified that they had heard of acts committed by the appellant from persons other than victims of offenses with which he had been charged.

■ Although we must adhere to the opinions of the Court of Criminal Appeals with respect to basing reputation testimony on specific acts, we are concerned that basing reputation testimony on specific acts is not in accord with the traditional rationale for reputation testimony. Reputation testimony is necessarily based on hearsay, but is admitted as an exception to the hearsay rule. For reputation testimony to be an exception to the hearsay rule it must meet two basic criteria: (1) that there is some necessity for the introduction of the testimony; and (2) that the testimony has some circumstantial probability of trustworthiness. 5 Wigmore, Evidence § 1580, 1611, & 1612 (Chadbourn rev. 1974); 1A R. Ray, Texas Law at Evidence Civil and Criminal § 1321 (Texas Practice 3d. ed 1980). The trustworthiness of reputation testimony stems from the fact that a person is observed in his day to day activities by other members of his community and that these observations are discussed. Over a period time there is a synthesis of these observations and discussions which results in a conclusion as to the individual's reputation. When reputation is based solely on specific acts, this synthesis is lost, as well as its reliability. When reputation testimony is given by police officers who have investigated an individual's offenses and by victims of an individual act who have spoken only with others who are also victims, it is obvious that the witnesses' conclusions as to the appellant's reputation will be slanted against the individual and will not have the trustworthiness implicit in the exception to the hearsay rule. The conclusion of such witnesses as to the reputation may be vastly different from those who have had the day to day contact within the community envisioned in the traditional exception to the hearsay rule for reputation testimony. What is actually occurring with testimony of this type is that a witness takes the specific acts of the individual and then infers what the reputation of the person would be. In this respect, this evidence could easily be fabricated and, thus, loses its reliability. Consequently, if this were an open question, we would likely hold that such testimony was inadmissible.

The rule that specific acts may be the basis for reputation also appears to be inconsistent with the rule that testimony as to specific bad acts, not resulting in a final conviction, are not admissible. The basis for the latter rule is that it is not possible to prove a person's character based upon specific instances of conduct. In this case, it appears that is precisely what is happening under the rule sanctioned by the Court of Criminal Appeals that reputation may be based on specific acts. Here the conclusion is being drawn that an individual's reputation is bad, which infers that the individual's character is bad, based upon specific acts which would not otherwise be admissible to prove bad character.

■ We turn next to the appellant's contention that the reputation testimony in

this case was improper because none of the witnesses was familiar with the appellant's reputation in Everman, the town in which he lived. We cannot agree that this testimony was improper under the authorities cited *supra* and *infra.* The testimony showed that the town of Everman was part of the same general community which encompasses Arlington and Fort Worth and also that Everman was in Tarrant County. Seven of the nine reputation witnesses who testified stated that they had spoken to people in Tarrant County in ascertaining appellant's reputation. The remaining two witnesses stated they spoke to people in the Dallas/Fort Worth area.

The Court of Criminal Appeals has been liberal in its definition of what a person's community is for reputation purposes and has stated "[a] person's community is not limited to the locale where the case is tried nor his residence at the date the offense was committed." *Arocha v. State,* 495 S.W.2d 957, 958 (Tex.Cr.App.1973) (Person's reputation could be affected by offense committed in Houston although appellant was resident of Austin). *See also Ables v. State,* 519 S.W.2d 464, 466 (Tex.Cr.App. 1975) (Reputation testimony admissible where witness talked to people in general area where defendant lived although not in town of his residence); *Jordan v. State,* 290 S.W.2d 666, 667 (Tex.Cr.App.1956) (testimony of persons who knew appellant's reputation in Dallas was admissible even though they did not know reputation in Richardson where he lived). Under the broad definition of community utilized by the Court of Criminal Appeals, the testimony of these witnesses who said they had spoken to persons in Tarrant County was admissible. As to the two witnesses who stated that they had spoken to people in the Dallas/Fort Worth area without specifying that they had actually spoken to people in Tarrant County, any error which may have resulted from the admission of their testimony was harmless since their testimony was cummulative of the other seven reputation witnesses.

Appellant next contends that the trial court erred when it failed to grant a hearing on the propriety of a photographic lineup shown to three of the reputation witnesses who claimed the appellant had raped them. Appellant argues further that the trial court erred in failing to permit him to perfect a bill of exception with respect to this matter. During the hearing to test their qualification as reputation witnesses, three of the witnesses, who claimed to be victims of the appellant, stated that, although they were not personally acquainted with the appellant, they believed he was their assailant because they had identified him in a photographic lineup. These witnesses neither identified the appellant nor stated before the jury that he had raped them. The extent of their testimony before the jury was that his reputation was bad. However, since the women had selected the appellant from a photographic lineup, the appellant argues that under the authority of *Martinez v. State,* 437 S.W.2d 842 (Tex. Cr.App.1969), he should have had the right to test the propriety of the lineup. We disagree. The rationale of *Martinez* was that a defendant should have the opportunity to test the identification by a witness who claimed that the defendant had committed the offense with which he was charged. The potential prejudice of an erroneous identification in the *Martinez* context is obvious. However, the appellant would have us apply *Martinez* in a different context. The witness in this case testified only as to appellant's reputation and gave no testimony with respect to appellant's guilt of the offense with which he was charged and for which he had been found guilty. Additionally, these witnesses stated that their conclusions as to appellant's reputation were based not only on their own experience, but also upon what they had been told by others. Because there was neither identification of the appellant by these witnesses in front of the jury, nor testimony with respect to appellant's guilt in this case, and because the witnesses based their testimony on what they had been told by others as well as their own experience, we hold that no error resulted from the trial court's failure to offer the

**502**

appellant a *Martinez* hearing. Since it was not error to deny the appellant a *Martinez* hearing, no error existed in refusing him the opportunity to document, by bill of exception, testimony which might have been adduced during such a hearing.

The appellant next contends that the trial court erred when it failed to give his requested charge that the jury should impose no sentence so disproportionate to the offense committed as to constitute cruel and unusual punishment. The jury was charged to impose a sentence within the limits prescribed by statute. A charge which sets out the statutory limits of punishment is normally considered adequate protection against the imposition of a cruel and unusual punishment. We see no reason why it would not be adequate protection in this case. *Jones v. State,* 504 S.W.2d 906 (Tex.Cr.App.1974).

In his final contention, the appellant argues that the trial court erred in failing to give his requested charge that the jury should assume the appellant would serve the full length of any sentence imposed and that the trial court erred in submitting a charge which implied that the appellant might be paroled and thus avoid serving the full term of the sentence imposed. The charge given by the trial court instructed the jury not to discuss or to consider what portion of the sentence imposed appellant actually would serve because this was a matter within the exclusive jurisdiction of the Board of Paroles and the Governor. The appellant contends that this restriction informed the jury that the Board of Pardons and Parole would likely release the appellant before he served his entire sentence, thus inducing them to compensate for this likelihood by imposing a higher sentence. We fail to see how the instruction of the trial court to the jury not to consider parole implied that the appellant would in fact be paroled. It is a widely known fact that prisoners often are paroled. Rather than emphasizing this fact, the trial court's instruction sought to exclude the possibility of parole from the jury's consideration. As to the appellant's contention that the trial judge should have instructed the jury to assume that the appellant would serve each day of his sentence, the appellant has cited no authority to support giving such an instruction nor have we been able to find such authority. We also fail to see, in light of the charge given, the need for the additional instruction. The premise of appellant's argument is that the jury would consider the possibility of parole and impose a longer sentence unless given the requested instruction. This premise is invalid because the consideration of parole which might have induced the jury to impose a higher sentence was removed from the jury's deliberations by the instruction given by the trial judge.

Affirmed.

SPARLING, J., concurs in result only.