Gary Don **LINDLEY,** Appellant,

v.

The **STATE** of Texas, State.

No. 2–86–117–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 9, 1987.

Discretionary Review Refused
Nov. 4, 1987.

---

Michael R. Rake, Hurst, for appellant.

Brock R. Smith, Dist. Atty., Decatur, for State.

Before FENDER, C.J., and BURDOCK and HOPKINS (Retired, sitting by Assignment), JJ.

## OPINION

HOPKINS, Justice.

This is an appeal from a conviction and jury-imposed punishment of seventy-five years and $75,000.00 fine for attempted manufacture of methamphetamine, TEX. REV.CIV.STAT.ANN. art. 4476–15, sec. 4.03(d)(3) (Vernon Supp.1987). In ten points of error, appellant claims unconstitutionality of the statute because of vagueness, defectiveness of the indictment, inadmissibility of evidence seized by search warrant, unpredicated "reputation" testimony, improper argument and insufficiency of the evidence. The indictment alleged that appellant, while acting as a party with two other named persons, committed the offense of attempted manufacture of methamphetamine.

The judgment is affirmed.

■ The unconstitutionality point is based on the use of the term "dilutant" in the statute prohibiting manufacture of the controlled substance. The term is claimed to be unknown to the English language and not statutorily defined. We, however, find an authoritative source defines "dilutant" as "diluent," which latter term means "a diluting agent as: . . . an inert substance (as powdered talc) added to a mixture esp. for reducing the concentration of active ingredients (as in an insectidal dust)." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 633 (3rd ed. 1981). Point of error one is overruled.

Appellant's attack upon the indictment is to the effect that it does not properly notify him of the nature and cause of the accusation against him as required by TEX. CONST. art. I, sec. 10.

By an amended motion to quash, appellant raised the contention that the offense of manufacturing a controlled substance may be committed in five ways, i.e., by preparation, propagation, compounding, conversion, and processing, therefore he is entitled to notice as to which the State intends to prove. He relies upon the rule in *Ferguson v. State*, 622 S.W.2d 846 (Tex. Crim.App.1980) wherein it was said "it is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act or omission, then upon timely request, the State must allege the particular manner or means it seeks to establish." *Id.* at 851. In *Ferguson* the unlawful act was delivery of a controlled substance, which could be accomplished in "at least three quite different situations." *Id.*

The State counters appellant's claim that he is entitled to notice of which method of manufacture was attempted, by pointing out that the offense charged here is the prepatory offense of criminal attempt, not the offense of manufacturing a controlled substance. In a prosecution for criminal attempt it is not necessary to allege the constituent elements of the attempted offense. *Williams v. State*, 544 S.W.2d 428 (Tex.Crim.App.1976). This is so, even in the instance where a motion to quash is levelled at the indictment. *Jones v. State*, 576 S.W.2d 393, 395 (Tex.Crim.App.1979). It follows, claims the State, that if it is not necessary to allege the constituent elements of the attempted offense, it was not necessary to specify the method of manufacture charged against appellant. We

could accept the State's thesis, were it not for the fact that in neither *Williams* nor *Jones* was the issue of constitutionally adequate notice raised. Accordingly, we will address the issue of sufficient notice, being mindful of the recent en banc decision of our Court of Criminal Appeals in *Adams v. State*, 707 S.W.2d 900, 901 (Tex.Crim.App. 1986). In that case the court wrote as follows:

> This Court has stated that the failure of a charging instrument to allege facts sufficient to give the defendant notice of precisely what he is charged with is a ground for an exception to the form under Articles 27.09(2), and 21.21(7), supra. *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974).
>
> We have also stated that when a challenge to an accusation for failure to give adequate notice on which to prepare a defense is properly and timely asserted with adequate statement of the manner in which notice is deficient, "fundamental constitutional protections are invoked." *Drumm v. State*, 560 S.W.2d 944 (Tex. Cr.App.1977). Such a challenge "calls for examination of the criminal accusation from the perspective of the accused." *Id.* "When the defendant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice." *Id.*
>
> Moreover, Article I, Section 10 of the Texas Constitution mandates that the notice petitioned for—information on which to prepare a defense—must come from the face of the charging instrument. [Citations omitted.]

*Id.* at 901. Writing further, the court stated:

> The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice." If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.

*Id.* at 903.

The pertinent portion of the indictment before us is as follows:

> [Appellant] did then and there while acting as a party with Michael Gerald Martin and Glenn Howard Cotton intentionally and knowingly, with the specific intent to commit the offense of unlawful manufacture of a controlled substance, to-wit: Methamphetamine, in an amount of more than four hundred (400) grams including adulterants and dilutants, do an act, to-wit: attempt to manufacture said controlled substance by means of chemical synthesis by a clandestine laboratory at a habitation located at Route 1, Box 195, Rhome, Wise County, Texas, and said act amounted to more than mere preparation that tended but failed to effect the commission of said offense of unlawful manufacture of methamphetamine....

Applicable portions of the statutory law governing this prosecution follow:

> [A] person commits an offense if he ... manufactures ... a controlled substance....

TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 4.03(a) (Vernon Supp.1987).

> "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance other than marihuana, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparation, compounding, packaging, or labeling of a controlled substance....

TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 1.02(21) (Vernon Supp.1987).

It can be seen that, in addition to the several meanings of manufacturing

provided for, there is, in further particularity, the requirement that the manufacture be either (1) directly or indirectly by extraction from substances of natural origin, (2) independently by means of chemical synthesis, or (3) by a combination of extraction and chemical synthesis. The indictment under consideration spells out (2) above in stating: "by means of chemical synthesis by a clandestine laboratory...." The term "synthesis" means "the *production* of a substance by the union of chemical elements, groups or simple compounds." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2321 (emphasis added). Thus, when this definition is substituted for the term "synthesis," the State has alleged "attempt to manufacture said controlled substance by means of chemical *production* of a substance by the union of chemical elements, groups or simple compounds by a clandestine laboratory...." "Production," being a necessary element of "synthesis," was alleged, so as to leave no doubt that manufacture by *production*, rather than by preparation, propagation, compounding, conversion or processing, was meant. Examining this indictment from the perspective of the accused and in the light of the presumption of innocence, we hold that it gives the accused adequate notice of the charges against him and is sufficiently specific and would serve as an adequate bar to future prosecutions.

█ Should we be in error in finding the charging instrument did not fail to convey some requisite item of "notice," the first step recommended in *Adams*, taking the next step, we could quickly determine in the context of the entire case that there was no impact on appellant's ability to prepare a defense. He did not question that the persons in control of the clandestine laboratory were attempting to manufacture methamphetamine by means of producing it through the union of chemical elements. His defense was only that he was not shown to have participated in the unlawful acts. There could be no prejudice to such a defense by a lack of specificity regarding the nature of manufacture. Point of error number two is overruled.

The sufficiency of evidence point is directed at the alleged failure of the State to "link" appellant to the crime. We will briefly state the evidence regarding the commission of the offense. Leroy Burch, chief deputy sheriff of Wise County, testified that he received information on April 15, 1985, from an informant that a clandestine drug laboratory was being operated in a house at Box 195, Route 1, Rhome, Texas. He was further informed that two people were burning trash outside the house in order to "knock-down the odor" associated with the enterprise. Burch went to the property and observed two men burning trash and detected the smell of an operating drug laboratory. A search warrant was obtained and executed on that date and two men, Glenn Cotten and Michael Martin, were arrested on the premises.

Glenn Carl Harbison, a chemist toxicologist employed by the Department of Public Safety, was called to the scene the same day. There, he supervised the gathering of chemical samples and equipment being utilized, about which he testified at trial. His testimony was that someone was in the process of manufacturing methamphetamine by the process of chemical synthesis. He explained that the only ingredients necessary are phenyl 2 propanone (p2p), methylamine, isopropyl alcohol, aluminum foil and mercuric chloride. When he arrived at the premises, the initial step of producing p2p was in progress. This is accomplished by cooking a mixture of phenyl ascetic acid, ascetic annhydride and sodium acetate in a vessel for a period of eighteen to twenty-four hours. The next step is to mix the p2p with the mercuric chloride and aluminum foil and then later, to introduce hydrogen chloride. The entire process can be finished in about three days. Harbison testified also that he knew of nothing besides methamphetamine which could be produced by the materials present at the scene. His opinion was that 9000 grams of methamphetamine would have been produced in the operation had the chemical synthesis not been interrupted by the officers.

Bob Bowland, an Arlington attorney, testified that he was the owner of the five

acre tract and house where the officers discovered the operating laboratory. Three days before the execution of the search warrant Bowland leased the property to the appellant. When appellant signed the lease on that day, he told Bowland that he and two other individuals would be living in the house. Bowland testified:

> He told me that *he had already moved in some of his things;* that he was in the process of cleaning the place up; that he had already started burning some of the trash—to get the place in order.... And further, that he wanted to go ahead and pay me a month's rent, even though I had executed the lease to begin on May 1st. He said that he didn't feel that would be fair, and insisted on paying me a half a month's rent, since he was already there and in the house. [Emphasis added.]

The State also offered into evidence an application for electrical service for the house that was signed by Gary Lindley on April 12, 1985. It was stipulated by the parties that the appellant signed such application. Also, the record reflects that the appellant entered a false driver's license number and social security number on the application.

It is accepted law that circumstantial evidence should not be tested by an ultimate standard of review different from direct evidence; the standard in both kinds of cases is whether any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex. Crim.App.1984). It is also stated that a process of elimination must be used to determine that circumstantial evidence rationally establishes guilt beyond a reasonable doubt. By that process, every other reasonable hypothesis, except that of guilt of the defendant, must be excluded. *Id.* at 195.

In the case before us, the only reasonable hypothesis, other than that of appellant's guilty participation, is that Cotten and Martin were acting independently and without the knowledge or consent of appellant. There is no evidence in the record tending to show that appellant, the lessee and person legally entitled to all right of possession and enjoyment of the premises, had surrendered exclusive possession to any other person or persons, or that the illegal activities on the premises were conducted by trespassers.

It should be kept in mind that in cases such as the one before us, unlike situations where knowing possession of contraband is an issue, the manufacturing process was in open view and obvious to anyone who entered the house. There was no furniture inside the house except for several folding lawn chairs. Holes had been knocked in a wall through which water hoses ran from the hot water heater to the glass cookers installed upon heating elements equipped with automatic timers. The proximity of Cotten and Martin coupled with their flight into the house upon the arrival of the officers is sufficient to show that they had at least, joint possession of the premises.

Settled law in possession cases is to the effect that when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of, and control over, the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Rhyne v. State,* 620 S.W.2d 599, 601 (Tex.Crim.App.1981). Furthermore, the fact that the premises had been rented by the accused is not, in and of itself sufficient to justify a finding of joint knowing possession of narcotics, if the premises are also occupied by others. *Id.* at 601. Similarly, when an attempt to manufacture a controlled substance takes place on premises leased by the accused, but occupied by others, the rationale of *Rhyne* dictates there must be additional independent facts and circumstances which affirmatively link the accused to the unlawful action before his guilt is established.

The Texas Penal Code provides:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

TEX.PENAL CODE ANN. sec. 7.01(a) (Vernon 1974).

A person is criminally responsible for an offense committed by another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. *See* TEX.PENAL CODE ANN. sec. 7.02(a) (Vernon 1974). In determining whether an individual is a party to an offense and bears responsibility therefore, we may look to events before, during and after the commission of the offense, and circumstantial evidence may be sufficient to show such responsibility, *Morrison v. State,* 608 S.W.2d 233, 234 (Tex.Crim.App.1980).

■ The record, of course, is devoid of any evidence of appellant's personal participation in the events of April 15th witnessed by the officers. The only evidence regarding appellant after the offense of April 15th is that he voluntarily surrendered subsequent to his indictment some thirty days later and that he never contacted Bowland after April 12th, except through his attorney on one occasion. Consequently, the events during and after the offense are of no assistance to our inquiry. Necessarily, then, we must look to events prior to the officers' raid if we are to find facts and circumstances which link appellant to the offense being committed on April 15th.

Antecedent events were the following:

1. After previously making a deposit of $200.00, appellant signed a lease on April 12th.
2. He insisted on paying rent from April 15th in spite of the fact that the term of lease began on May 1st.
3. He then stated:

   a) He had already moved in some of his things.

   b) He was in the process of cleaning the place up.

   c) He had already started burning some of the trash.

   d) He and two others would be occupying the premises.

4. He applied for electric service to the premises.

Considering the above in the light most favorable to the verdict, we hold that the circumstances of this case exclude every other reasonable hypothesis except that appellant acquired the premises, took immediate possession by moving his equipment in, insured that the landlord would have no reason for further inspection by paying rent for the period up to the date of the beginning of the lease term, and with the intent to promote or assist the commission of the offense, at least aided Cotten and Martin. Finding the evidence sufficient to support the jury's verdict that appellant was a party in the commission of the alleged offense, we overrule point of error number eight.

Appellant also complains of the refusal of the trial court to hear his amended motion to quash the indictment. The record pertaining to that point discloses the following circumstances. On May 5, 1986, the parties announced ready for trial at which time counsel for appellant stated:

> Your Honor, for the record, I would like to note that we are ready subject to our motions that are on file today, and it's my understanding that the Court—that we will have a hearing on all of our motions following the voir dire proceedings.

In response the court said:

> Yes, we'll—I'll hear your motions after the voir dire.

The jury was then selected and sworn; the indictment was read; and appellant entered his plea of not guilty. A recess was declared and the jury was excused until the following day. The court then proceeded to consider appellant's pre-trial motions.

Appellant's motions for discovery and inspection were considered and ruled upon. His motion to require disclosure of a confidential informant's identity was considered and denied. A motion to compel disclosure of all evidence favorable to the defendant was granted. A motion for discovery of criminal records of State's witnesses was considered and ruled upon, as was a motion in limine. There remained an amended mo-

tion to quash the indictment and a motion to suppress evidence. When the trial court considered the motion to quash, the prosecutor objected to its consideration because jeopardy had already attached and a ruling favorable to the defendant would result in the impossibility of retrying the case. Appellant argued that there had been an agreement by the prosecutor that pre-trial motions could be heard and disposed of on the day of trial. The prosecutor's position was that only discovery and suppression motions were contemplated by the agreement. The court ruled that the amended motion to quash was untimely presented and declined to rule on its merits. There followed a hearing on the motion to suppress, which was overruled.

█ This court is aware of the practice of delaying disposition of pre-trial motions, especially those which require testimony, until the day the witnesses are in attendance in court for the trial. We find no fault in such procedure so long as neither the State nor the accused will be prejudiced by an unfavorable ruling at that late date.

We, however, strongly disfavor a procedure where pre-trial motions are considered for the first time after the trial has actually already begun. Point of error number three is sustained.

The error presented by this point, however, did not result in harm to appellant. His objections to the indictment presented to the trial court are the same objections previously considered and ruled upon in this opinion in connection with point of error two.

█ By his sixth point, appellant attacks the admissibility of evidence seized upon execution of a search warrant. He contends that the warrant in question was an evidentiary warrant issued under authority of TEX.CODE CRIM.PROC.ANN. art. 18.-02(10) (Vernon Supp.1987), and as such, it could only be issued by the judge of a statutory county court, district court, the Court of Criminal Appeals, or the Supreme Court of Texas. See TEX.CODE CRIM. PROC.ANN. art. 18.01(c) (Vernon Supp. 1987). The affidavit for search and arrest warrant in the record articulates grounds for issuance of warrant in the following language:

2. THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS:
Amphetamine or Methamphetamine and equipment, chemicals and other devices used in its manufacture and production of amphetamine or methamphetamine.

It does not specifically describe property or items that are to be searched for or seized nor does it assert that the specifically described property or items constitute evidence of a specific offense, or evidence that a particular person committed that offense. Probable cause of such matters must be established before an evidentiary warrant may issue. TEX.CODE CRIM.PROC. ANN. art. 18.01(c) (Vernon Supp.1987). To the contrary, the allegations of the affidavit follow the statement of grounds for issuance contained in article 18.02(7) or (9), which follows:

(7) drugs kept, prepared or manufactured in violation of the laws of this state;

....

(9) implements or instruments used in the commission of a crime.

TEX.CODE CRIM.PROC.ANN. art. 18.-02(7) & (9) (Vernon Supp.1987). A search warrant issued upon either of the above grounds may be issued by any magistrate, who need not be one of those magistrates designated as empowered to issue an evidentiary search warrant. See TEX.CODE CRIM.PROC.ANN. art. 18.01(a) (Vernon Supp.1987).

Appellant leans heavily upon his cross-examination of Deputy Sheriff Burch during the hearing on his motion to suppress, to conclude that the search warrant issued under subsection 10. Burch, who was the affiant in the affidavit for search warrant, testified as follows:

Q. [W]as the basis of this search warrant, was it to go in there and seize evidence of an offense, or evidence— constituting evidence—Excuse me—or

property constituting evidence tending to show that a particular person committed a crime?

A. Yes, sir.

. . . .

Q. Okay. Now, you understand the question, don't you?

A. Well, I'll tell what the search warrant was to me. Okay. It's a—We went down there, we knew there was an offense being committed. I had an informant. We went down there with a search warrant to arrest and to—and to seize all the evidence.

We find that such testimony is not contradictory of the affidavit nor is it sufficient to categorize this warrant as an evidentiary warrant under section 10. Any of the items authorized to be seized by sections 1 through 9 may constitute evidence. It is readily apparent that section 10 is reserved for evidentiary items which do not fit any of the categories included in the first nine sections. Point of error six is overruled.

By his point of error number seven, appellant questions the admissibility of a stipulation that he was the person who contracted for electric service to the residence where the laboratory was in operation. He now claims a violation of the provisions of TEX.CODE CRIM.PROC. ANN. art. 1.15 (Vernon 1977) in that there was no written consent to waive the appearance, confrontation, and cross-examination of witnesses. This contention is without merit since article 1.15 applies only when the defendant has "waived his right of trial by jury." *See Clark v. State,* 657 S.W.2d 121 (Tex.Crim.App.1983). Point of error number seven is overruled.

Appellant's point of error nine asserts that the prosecutor's argument at the punishment stage was reversibly erroneous as being prejudicial and outside the record. At the outset we observe that the point is multifarious, in that it singles out three specific portions of the argument, each of which is attacked as comments on matters outside the record. Such a multifarious point fails to properly preserve any error. *See Little v. State,* 567 S.W.2d 502 (Tex. Crim.App.1978). Nevertheless, the point

will be addressed, since it directs this court to the error about which complaint is made. *See* TEX.R.APP.P. 74(d).

The prosecutor first argued:

Now, one thing struck me, and I thought about this during the lunch hour. As each one of these fine men testified, Mr. Rake would ask him, "Has he ever committed a crime of violence."

Crime of violence? You know, ladies and gentlemen of the jury, how many 14–15 year old children does it take to OD on this kind of stuff before it's a crime of violence?

The defense objection to such argument was sustained, and the jury was instructed to disregard, and the motion for mistrial was denied. The prosecutor next argued:

How many people have to be affected by this kind of drug before it becomes a crime of violence?

How many burglaries have to occur?

The trial court again sustained the objection, instructed the jury to disregard the reference to burglaries, and denied the motion for mistrial. Finally, the prosecutor argued:

The thing about this kind of drug, once it's manufactured, once it leaves Route 1, Box 195, Rhome, Texas, the kind of person that manufactures it, they don't care where it goes. They could care less about where it goes.

It doesn't matter how it gets to the streets. It doesn't matter how—

The defense objection that such argument was outside the record was overruled.

The foregoing arguments were clearly in response to, and appear to have be invited by, the defense attempt to show that appellant was not a man of violent proclivities. Such an effort must bear the natural risk of rebuttal in circumstances where such a large quantity of illegal controlled substance has been laid at the doorstep of appellant. We hold it to be a matter of public knowledge that the manufacture, distribution or consumption of large quantities of illicit drugs are activities fraught with violence in some form, and that legitimate comment could be made in

that regard to answer the deliberate inference of appellant's non-violence. However, we think the prosecutor's specific reference to teenagers' overdosing and burglaries was improper, and should not have been made. Unless the remarks are so inflammatory that their prejudicial effect cannot reasonably be removed with instructions to disregard, a reversal of the conviction is not required. *See Carraway v. State*, 507 S.W.2d 761 (Tex.Crim.App.1974); *Hodge v. State*, 488 S.W.2d 779 (Tex.Crim.App.1973). *See also Thomas v. State*, 578 S.W.2d 691 (Tex.Crim.App.1979). We hold the error in the first two instances was rendered harmless by the sustaining of the objection and the court's instruction. As to the statement that the manufacturer doesn't care where his product goes or how it gets on the streets, we hold it to be a reasonable deduction to be made under the evidence in this case. *See Garza v. State*, 622 S.W.2d 85, 93 (Tex.Crim.App.1980) (opinion on reh'g). Point of error nine is overruled.

■ By point of error ten, appellant presents a claim that none of the seven police officers who testified as to his bad reputation for being peaceable and law-abiding were qualified to give such testimony. The claim is based upon the witnesses' voir dire testimony that they learned of such reputation from talking to other officers, informants and drug users and also from their own surveillance of appellant and investigations of other conduct. It is appellant's contention that in the absence of information from "the general community," the witnesses had no personal knowledge of his reputation.

Reliance is had upon *Wagner v. State*, 687 S.W.2d 303 (Tex.Crim.App.1984), a case in which the Texas Court of Criminal Appeals, on rehearing, held that the reputation witness was not qualified because his testimony was based solely upon discussions with one Charles Gans regarding a particular threat made by the defendant against Gans. The court specifically approved of the opinion of the Dallas Court of Appeals written in *Moore v. State*, 663 S.W.2d 497, 500 (Tex.App.—Dallas 1983, no pet.) and quoted therefrom as follows:

Reputation testimony is necessarily based on hearsay, but is admitted as an exception to the hearsay rule. For reputation testimony to be an exception to the hearsay rule it must meet two basic criteria: (1) that there is some necessity for the introduction of the testimony; (2) that the testimony has some circumstantial probability of trustworthiness. 5 Wigmore, Evidence section 1580, 1611, & 1612 (Chadbourn rev. 1974); 1A R. Ray, Texas Law at Evidence Civil and Criminal section 1321 (Texas Practice 3d. ed 1980). The trustworthiness of reputation testimony stems from the fact that a person is observed in his day to day activities by other members of his community and that these observations are discussed. Over a period time [sic] there is a synthesis of these observations and discussions which results in a conclusion as to the individual's reputation. When reputation is based solely on specific acts, this synthesis is lost, as well as its reliability.

*Wagner*, 687 S.W.2d at 313. In *Moore*, the issue was whether the synthesis of observations and discussions of an accused's activity which comprise his reputation may be constituted solely by specific acts, and is not in point here. Appellant urges however that members of his community refers to a more inclusive cross section of the community than the segment composed of police officers. His contention is that trustworthiness of reputation testimony requires input from persons other than police officers. No authority other than the above quoted language is given for such contention and we know of none. We have no doubt that the degree of reliability of such testimony would increase with the addition of testimony based on observations by members of the community other than police officers. Regardless of our belief that maximum reliability of reputation evidence is to be desired, we cannot hold that testimony of reputation based upon discussions with police officers, informants and drug users is unqualified, since it has been held "[d]iscussions just with other officers in the defendant's community are sufficient to qualify a witness on

reputation." *See Jackson v. State,* 628 S.W.2d 446, 450 (Tex.Crim.App.1982); *Martin v. State,* 449 S.W.2d 257, 260 (Tex.Crim. App.1970). Point of error ten is overruled.

Finding no reversible error, we affirm the judgment.